# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TANI GALLUP,

    Plaintiff,

v.                                                                                  NO. 10-CV-1117 WJ/RHS

ALBUQUERQUE POLICE OFFICER
HAROLD SENNET,

    Defendant.

*Consolidated with:*

TANI GALLUP,

    Plaintiff,

v.                                                                                  NO. 12-CV-172 WJ/RHS

ALBUQUERQUE POLICE OFFICER
GERALD SHELDEN,

    Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REQUESTING DISMISSAL OF PLAINTIFF'S COMPLAINT ON QUALIFIED IMMUNITY GROUNDS

THIS MATTER comes before the Court on Defendant Officer Harold Sennett's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds (**doc. 32**), filed January 26, 2012, which has been joined by Defendant Gerald Shelden (doc. 45).  For the reasons stated herein, the Court finds that Defendants' motion is well taken and will be **GRANTED** as to both Defendant Sennett and Defendant Shelden.

**BACKGROUND**

On November 12, 2008, Mr. Gordon Gunn called police dispatch to report a robbery that took place the previous evening at 701 57th St. N.W. in Albuquerque, New Mexico. Defendants Sennett and Shelden were dispatched to respond to the report.

Upon arrival, the officers interviewed Mr. Gunn, who provided them with the following information: Mr. Gunn had owned the property, and then sold the property to Plaintiff under a real-estate contract, leaving Plaintiff a responsibility to make mortgage payments to Mr. Gunn. Plaintiff did not live at the residence, but used the house for her non-profit corporation "La Casa de las Amigas," a half-way house for women.

Eventually, Plaintiff failed to make payments and her interest in the house was terminated. Mr. Gunn sent both an email to Plaintiff and a phone message informing her of the termination of her rights and restriction from the property.[1] Additionally, the locks at the residence were changed, and two documents—an Affidavit of Uncured Default and Election of Termination, and a letter purporting to be a courtesy notice regarding the default and retaking of possession of the house—had been given to a resident of the halfway house to give to Plaintiff. The two documents referred to Carolyn Gunn, Mr. Gunn's wife, as the owner of the property.

On the evening of November 11, 2008, Plaintiff entered the house and removed property that did not belong to her with an estimated value of over $500. Plaintiff also removed some items that might have belonged to her.

After receiving this information from Mr. Gunn, Defendants spoke with one of the

---

[1] While Mr. Gunn and Defendant Sennett use the word "foreclosure" to refer to the situation, in actuality the documents presented to Defendants state that Plaintiff's possessory interest in the house was being terminated due to her default under a clause of the contract.

residents of the half-way house, Kari Petersen, who had witnessed Plaintiff's return to the house on November 11.  Ms. Peterson gave the officers the following information:  she and two other residents were in the house and the doors were locked.  Plaintiff entered through the garage.  Ms. Peterson informed Plaintiff that she was not allowed on the property, and that Ms. Peterson had been instructed to call the police should Plaintiff come into the house.  When Ms. Peterson attempted to give the two default-related documents from the Gunn's to Plaintiff, Plaintiff's friend took them instead and began to read them.  Plaintiff then told Ms. Peterson that the documents "were not valid due to she had to go to court to receive these papers." (Doc. 32-3 at 11.)  Plaintiff proceeded to take various items from the half-way house.

After Defendants spoke to Mr. Gunn and Ms. Peterson, they reviewed the documents given to them, and had the witnesses write statements.  Then Defendant Sennett wrote a "Criminal Complaint – Arrest Warrant Affidavit."  This affidavit recorded the results of Defendants' investigation, with two apparent inconsistencies: first, the affidavit says that Ms. Peterson handed the documents to Plaintiff herself, which conflicts with Ms. Peterson's written statement that she gave the documents to Plaintiff's friend; and second, the affidavit says that Ms. Peterson advised Plaintiff that she was not allowed to enter before Plaintiff entered the garage, while Ms. Peterson's written statement says that Plaintiff had already entered the house by the time Ms. Peterson spoke with her.

Defendant Sennett submitted the affidavit first to an Assistant District Attorney for approval, and then to a Judge, who issued an arrest warrant based upon its content.  Defendants executed the warrant at Plaintiff's residence on November 12, 2008, and Plaintiff was arrested for the crimes of Residential Burglary in violation of N.M. Stat. Ann. § 30-16-3A (1978), and Embezzlement (over $500 and under $2500) in violation of N.M. Stat. Ann. § 30-16-8D (1978).

As it turns out, much of what the witnesses told Defendants appears to have been mistaken information. Plaintiff was not restricted from the premises, and she had a right to possess the items that she removed. The criminal case against Plaintiff was eventually dropped. Now Plaintiff brings suit under 42 USC § 1983, alleging in Count I that she was subject to unreasonable seizure, and in Count II that she was subject to malicious prosecution without probable cause.

## LEGAL STANDARD

When a party files a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000). In the context of a motion for summary judgment motion premised on qualified immunity, the analysis is different from an ordinary motion for summary judgment. *Id.* at 1205–06. "Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) (quoting *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007)) (internal quotation marks and citations omitted). Qualified immunity is a recognition of "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority," with the result that "officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

## DISCUSSION

Plaintiff argues that she was deprived of her civil rights under two theories: unreasonable

seizure, presumably under the Fourth Amendment, and malicious prosecution, which can involve deprivation of her Fourth Amendment rights and her Fourteenth Amendment rights.

**I.      Unreasonable Seizure**

Plaintiff claims that Defendants arrested her without probable cause, thus violating her Fourth Amendment rights.  "Probable cause exists to arrest if 'facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'"  *Tanberg v. Sholtis*, 401 F.3d 1151, 1159 (10th Cir. 2005) (quoting *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir.1995)).

During the course of their brief investigation, Defendants spoke with two witnesses and examined the two documents given to them.  Between the documents and the witnesses, Defendants learned the following facts:

- Plaintiff had defaulted on her payments, the owner Carolyn Gunn had retaken possession, and Plaintiff was restricted from the premises;

- Mr. Gunn left a voice message and sent an email to Plaintiff informing her that she was restricted from the house;

- the locks of the house had been changed;

- Plaintiff came to the house, entered through the garage rather than the other entrances, and began to remove items from the house;

- some of the items removed did not belong to Plaintiff;

- when Plaintiff entered, Ms. Petersen informed Plaintiff that she was not allowed in the house;

- when Ms. Petersen tried to deliver the two documents to Plaintiff, Plaintiff's friend took the documents, and Plaintiff said that any documents restricting her access to the house were not valid until she received them at court.

From all this information, there was probable cause to arrest Plaintiff.  Plaintiff's actions

in entering through the garage (the only entrance she still had access to) and beginning to remove items from the house suggest that Plaintiff had already received notice of the Gunns' attempt to exclude her from the premises, which she could have done by listening to Mr. Gunn's phone message or reading his email. "[W]here a [person] has notice that he is not authorized to enter a particular area and he, nevertheless, does so with the intent to commit a theft, he can be charged with burglary." *State v. Tower*, 59 P.3d 1264, 1266 (N.M. App. 2002). Additionally, Defendants learned that some of the items Plaintiff took from the house did not belong to her, but instead belonged to the safe-house or to various donors, which fact supports probable cause that Plaintiff had taken items not belonging to her valued at over $500. Though the witnesses proved in the end to be at least somewhat unreliable, Plaintiff has pointed to no signs of unreliability that should have led Defendants to disregard their information. Thus, in light of all of the information which Defendants learned in the course of their brief investigation, there was probable cause to believe that Plaintiff had committed either the crime of larceny or embezzlement, and also the crime of burglary.[2]

Plaintiff argues that the arrest warrant was invalid because Defendant Sennett misrepresented some of the key facts: (1) that Plaintiff was given the two documents in person, and (2) that she was told she was not allowed in the house before she entered the house. The facts as recorded in Defendant Sennett's affidavit do present stronger support for probable cause

---

[2]*See* N.M. Stat. Ann. § 30-16-1A ("Larceny consists of the stealing of anything of value that belongs to another."); §30-16-8A ("Embezzlement consists of a person embezzling or converting to the person's own use anything of value, with which the person has been entrusted, with fraudulent intent to deprive the owner thereof."); § 30-16-3A ("Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony."). Though Plaintiff was not charged with larceny, that fact does not affect the probable cause analysis. *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground.").

than the facts within the witness statements.  However, "[w]here false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit."  *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  Likewise, "[i]n a case involving information omitted from an affidavit, the existence of probable cause is determined 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.'" *Id.* (quoting *Stewart v. Donges*, 915 F.2d 572, 582, n.13 (10th Cir. 1990)).  Applying those rules to this case, if the warrant had accurately set out all the facts the warrant affidavit would still have supported a determination of probable cause, as discussed *supra*.  Therefore, the fact that Defendant Sennett included inaccuracies in the warrant affidavit, while perhaps sloppy police work, does not undermine the probable cause determination for Plaintiff's arrest.

   One final point of inquiry is whether Defendants had a duty to further investigate the situation before making their determination of probable cause, filing Defendant Sennett's warrant affidavit, and arresting Plaintiff.  Plaintiff argues strenuously that if Defendants had carried out further investigation, in particular an examination of the contract between Plaintiff and the Gunns, Defendants would have discovered that Plaintiff was not restricted from the premises—negating probable cause for burglary.  Likewise, Plaintiff argues that if Defendants had further investigated the ownership of the items that Plaintiff removed, Defendants would have discovered that Plaintiff owned or had rights to take custody of those items—thus negating probable cause for larceny or embezzlement.

    According to the outcome of Plaintiff's prosecution, it appears that she was in fact innocent of the crimes for which she was arrested.  In fact, the Court can understand Plaintiff's

frustration at her arrest.  However, the simple fact that an innocent person is arrested does not give rise to a cause of action under § 1983.  *See generally Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995).  The Fourth Amendment does not require a perfect investigation; instead,"the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Id.* at 1476–77.  In this case, Defendants questioned the two witnesses present at the scene when they arrived, and examined the two documents presented to him.  Plaintiff presents no evidence that the contract between Plaintiff and the Gunns was ever presented to Defendants or even available at the scene.  Defendants did not "close [their] eyes to facts that would help clarify the circumstances of an arrest" (*BeVier v. Hucal*, 806 F.2d 123, 127 (7th Cir. 1986) as Plaintiff argues, but instead relied on apparently trustworthy information from witnesses at the scene, and investigated all of the information that appears to have been available to them at the scene.  *See Romero*, 45 F.3d at 1476–77.  Defendants were not required, at pain of personal liability, to specifically request the contract, nor to investigate Plaintiff's later protestations of innocence.  *See id.* at 1480 ("Once Defendants concluded that the initially discovered facts established probable cause, they were under no obligation to forego arresting Plaintiff or release him merely because he said he was innocent.).  Therefore the Court holds that Defendants' investigation and probable cause determination satisfied the requirements of the Fourth Amendment.

## II.     Malicious Prosecution

"In this circuit, when addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the 'starting point' of our analysis; however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right."

*Novitsky v. City Of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007).  In this context, the constitutional rights may flow from either the Fourth and Fourteenth Amendments.  *Id.* at 1258.

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Id.* (internal citations and quotations omitted).

The Court, in the context of the reasonableness of Plaintiff's seizure, has already found that there was adequate probable cause to support Plaintiff's arrest.  Therefore, Plaintiff cannot establish the third element of the malicious prosecution action, or, more to the point, a violation of her Fourth Amendment rights.  In the interests of thoroughness, the Court also notes that Plaintiff cannot establish that Defendants acted "knowingly or with reckless disregard for the truth, rather than out of negligence or inadvertence."  *Taylor v. Meacham*, 82 F.3d 1556, 1563 (10th Cir. 1996).  Plaintiff has presented no evidence that any lack of further investigation or any inaccuracies in Defendant Sennett's affidavit were intentional.  *See Novitsky*, 491 F.3d at 1258 (finding no evidence of intentional conduct where police officers "inaccurately recount[ed] the sequence of events leading to the discovery of the firearm" in their reports).  Therefore, even though the elements of malicious prosecution are only a guideline in the constitutional analysis, Plaintiff has failed to prove the most fundamental parts of malicious prosecution: that is, Plaintiff failed to show that the prosecution was either unreasonable or malicious.  Therefore, the Court grants Defendants' motion with regard to Plaintiff's Count II, malicious prosecution.

## CONCLUSION

Even viewing the facts in the case in the light most favorable to Plaintiff, Plaintiff has

failed to offer sufficient evidence to support her contentions in this case;

**IT IS THEREFORE ORDERED** and **ADJUDGED** that Defendant Sennett's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds is hereby **GRANTED** as to both Defendant Sennett and Defendant Shelden, thus disposing of these consolidated cases on their merits.

_____
UNITED STATES DISTRICT JUDGE